UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NEDRA MCCULLEN,

                Plaintiff,

-vs-                                                Case No.  5:06-cv-202-Oc-10GRJ

R D R, LLC, d/b/a Beef O'Brady's, Inc.,

                Defendant.
_____

## **O R D E R**

This is a Pregnancy Discrimination Act suit alleging workplace discrimination and retaliation. It is before the Court for consideration of the Defendant, R D R, LLC's Motion for Summary Judgment, (Doc. 30), to which the Plaintiff, Nedra McCullen, has filed a response in opposition. (Doc. 39). The Court has reviewed each side's arguments as well as the entire record in this case and concludes that the Defendant's Motion is due to be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Taking the facts in the light most favorable to the Plaintiff, the Court finds the following material, undisputed facts.

A.      The Parties

Plaintiff, Nedra McCullen, is a resident of Leesburg, Florida. She was hired in late 2004 by the Defendant, R D R, LLC d/b/a Beef O' Brady's, Inc., as a waitress/server for the Defendant's new Beef O' Brady's restaurant. The Plaintiff was one of the first employees

at the new restaurant, which is located in The Villages, a large retirement community situated in both Marion and Sumter County. Throughout her employment with the Defendant, the Plaintiff was never formally disciplined or given any written evaluations. The Plaintiff's last day of work with the Defendant was September 16, 2005.

The Defendant is a Florida corporation doing business in Sumter County, Florida. Dennis Coughlin and his wife Jodie Coughlin own approximately 40% of the interest in the corporation, and are the owners and operators of the restaurant where the Plaintiff worked. Jodie Coughlin hired the Plaintiff.  Peter Cunningham was the restaurant's manager, and the Plaintiff's immediate supervisor.  Cunningham set all work schedules and had the authority to discipline all employees, including the Plaintiff.  He never had any criticisms of the Plaintiff's work performance, and thought she was one of the best employees.  Dennis and Jodie Coughlin are Cunningham's immediate supervisors.

B.     The Plaintiff's Employment

Until approximately June or July of 2005, the Plaintiff typically worked between 32 and 40 hours each week with occasional overtime.  She also worked at least two shifts behind the bar each week,[1] and never called in sick or left work early.   In late June of 2005, the Plaintiff notified the Defendant, through Cunningham, that she was pregnant. Almost immediately after she announced her pregnancy, Cunningham began making numerous derogatory remarks to the Plaintiff about her appearance and her ability to

---

[1] The bartending shifts were very valuable, as employees could make substantially more money in tips.

continue working. For example, he would tell the Plaintiff that her breasts looked funny, that she would look funny pregnant, that her rear-end was lopsided, and that she should not breast feed because it would change the shape of her nipples. Cunningham also questioned whether the Plaintiff would be a good mother, and told her that she would not be able to last in her current position because she was pregnant.[2]

In addition to these comments, Cunningham began to drastically reduce the Plaintiff's hours at work. Between March and June of 2005, the Plaintiff worked between 184.63 and 146.59 hours each month - essentially 35 to 40 hours per week. Beginning in July, however, after the Plaintiff informed the Defendant of her pregnancy, her hours were reduced to 135.02. In August, 2005, the Plaintiff only worked 100.14 hours, and she only worked 43.93 hours in the first 15 days of September, 2005. The Plaintiff also lost all of her bartending shifts, and was scheduled to work night shifts, despite repeatedly requesting morning or day shifts.

The Defendant contends that the Plaintiff's pregnancy had nothing to do with her reduced hours, but rather was a direct result of the seasonal slowdown of business which occurs every summer when retirees leave for cooler climates. The Defendant further contends that all of its servers' hours were reduced in similar way as a result of the

---

[2]Cunningham admits making comments about the Plaintiff's rear-end, but denies all other comments.

3

seasonal slowdown.[3] However, a review of the Defendant's payroll records demonstrates that several employees did not suffer any reduction in hours, while others did not suffer a reduction as severe as the Plaintiff's.

After the Plaintiff announced her pregnancy, Cunningham also refused to allow the Plaintiff to take breaks during her shifts to grab a quick snack, and would yell at the Plaintiff if he caught her eating on the job. Non-pregnant employees, however, were permitted to take breaks to smoke cigarettes. Cunningham also observed another non-pregnant employee eating while on the clock, but did not discipline her.

Between June 2005 and September 16, 2005, the Plaintiff called in sick once, towards the end of August. She was out sick for four days with the flu, and sought medical care. She returned to work on or about August 28, 2005 to attend a mandatory employee meeting. During the meeting, Cunningham reprimanded the Plaintiff in front of all other employees for showing up without a doctor's note excusing her absence, accused her of lying about her illness, and informed her that she could not return to work without a doctor's note. A few days later, the Plaintiff presented Cunningham with a doctor's note, which he

---

[3]The Defendant has presented conflicting testimony as to why the hours were reduced and which employees were impacted. Dennis Coughlin initially stated, under oath, that all servers' hours were reduced due to seasonal slowdown. At his deposition, he changed this statement to only non-key personnel. Cunningham and Jodie Coughlin, however, testified that no servers' hours were reduced, and that the Plaintiff's hours were never reduced at all. The Defendant's payroll records also demonstrate that several employees' hours were never reduced, but that the Plaintiff's hours were dramatically cut starting in July 2005.

refused to accept. Other than this one absence, the Plaintiff did not miss any other time for work, and did not ask to leave early.[4]

C.    The Plaintiff's Complaints

Starting in July, 2005, the Plaintiff complained to both Dennis and Jodie Coughlin about Cunningham's comments, explaining that the comments made her feel very uncomfortable. The Plaintiff also complained that she was not tending bar as often as she had in prior weeks. Jodie Coughlin told the Plaintiff that Cunningham often made jokes and took them too far, but that he meant no harm, and she would speak to him. It does not appear from the record that Mrs. Coughlin ever had such a conversation with Cunningham.

During this same time period, the Plaintiff also made numerous complaints directly to Cunningham about her reduced work hours and lack of bartending shifts. These complaints were all ignored..

On August 28, 2005, following the employee meeting, the Plaintiff called Jodie Coughlin and complained that she felt she was being treated differently from other non-pregnant servers, particularly with respect to her reduced work hours. The Plaintiff also told Mrs. Coughlin that Cunningham was continuing to make "hurtful" comments, and that the Plaintiff thought Cunningham wanted her to quit. The Plaintiff concluded by telling

---

[4]Dennis Coughlin contends that the Plaintiff did, in fact, leave early on several occasions, a fact not supported by his manager, Cunningham.

Jodie Coughlin that she was extremely stressed and anxious about going to work and did not know how much longer she could work for the Defendant.

In response, Jodie Coughlin assured the Plaintiff that she was one of the Defendant's best servers, and that she would address the Plaintiff's complaints directly with Cunningham. Again, it appears from the record that Mrs. Coughlin did not take any action.

At the same time the Plaintiff called Jodie Coughlin, the Plaintiff's mother called Dennis Coughlin. The Plaintiff's mother complained to Dennis Coughlin that she was worried about the Plaintiff's stress levels and the harassment she was suffering from Cunningham. The Plaintiff's mother specifically told Dennis about Cunningham's comment that the Plaintiff would not last at work because she was pregnant. Dennis Coughlin assured the Plaintiff's mother that he would speak with Cunningham immediately.

Dennis Coughlin kept his word and spoke with Cunningham, who denied any wrongdoing. For several days after his conversation with Dennis Coughlin, Cunningham refused to speak with the Plaintiff at all. He would not acknowledge her presence, and relayed any work orders to the Plaintiff through another employee. This silence only lasted a few days, however, and Cunningham once again began to make derogatory comments about the Plaintiff's pregnancy. The Plaintiff's work hours did not increase during this time.

On September 16, 2005, the Plaintiff arrived for work and gave Cunningham a copy of a charge she filed with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission that day. Cunningham immediately took the charge to Dennis Coughlin, who finally convened a meeting with himself, Cunningham and the

Plaintiff to discuss her complaints. During the meeting, the Plaintiff reiterated all of her complaints about her reduced hours and Cunningham's comments. Cunningham reacted by yelling at the Plaintiff for approximately the first 30 minutes of their meeting, calling her a liar and denying all of her allegations. Dennis Coughlin sided with Cunningham and repeatedly told the Plaintiff that Cunningham had done nothing wrong. Mr. Coughlin further told the Plaintiff that she had to follow all of Cunningham's orders, and that the Plaintiff had no right to complain. Both Dennis Coughlin and Cunningham also told the Plaintiff that she should expect to have comments made about her appearance because she was a cute girl.[5]

The Plaintiff became very emotional and upset during the meeting and told Dennis Coughlin and Cunningham that she did not want to work the rest of the day. She was permitted to leave work without reprimand, and was told to return to work on her next scheduled shift. The Plaintiff did not return to work for the Defendant again.

The Plaintiff applied for two positions at two veterinary clinics in September and October 2005 but did not obtain the jobs. She did not attempt to seek work again until August 2006, and never sought employment in the restaurant industry again. She is currently employed at Lake Medical Imaging.

D.     Procedural History

---

[5] Dennis Coughlin denies making these comments, and instead contends that he told the Plaintiff he would try to correct any problems.

The Plaintiff initiated this case on June 16, 2006, with the filing of a four-count Complaint. (Doc. 1). Two of the claims were brought under the Florida Civil Rights Act, Fla. Stat. § 760, *et seq.,* and alleged pregnancy-based discrimination and retaliation (Counts I and II). Counts III and IV alleged a violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), ("PDA"), and a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), respectively.

On May 3, 2007, the Court dismissed both of the Plaintiff's claims under the Florida Civil Rights Act, (Doc. 33), pursuant to the Plaintiff's notice of voluntary dismissal. (Doc. 29). Therefore, the only remaining claims are a claim of disparate treatment discrimination in violation of the PDA and a Title VII claim of retaliation.[6]

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in

---

[6]The Defendant argues that the Plaintiff also sought relief under a hostile work environment theory, but the Plaintiff has made clear that she is not seeking relief under such a theory. See Plaintiff's Response in Opposition, p. 12, n. 1.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## DISCUSSION

A.   The Plaintiff's Disparate Treatment PDA Claim

Discrimination on the basis of pregnancy is prohibited by the Pregnancy Discrimination Act, which falls within Title VII's prohibitions against gender-based workplace discrimination.  See 42 U.S.C. § 2000e(k).  The Court's analysis of pregnancy discrimination claims "is the same type of analysis used in other Title VII sex discrimination suits."  Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000) (citing Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994)).  In this case, the Plaintiff has alleged a claim of disparate treatment based on a theory of "pretext" and supported by circumstantial evidence.  In such situations, the burden-shifting analysis first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and refined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981), applies.  See Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313-14 (11th Cir. 1994); Maddox v. Grandview Care Center, 780 F.2d 987, 990 (11th Cir. 1986).

*1.     Prima Facie Case*

The first step under the McDonnell Douglas burden-shifting analysis focuses on establishing a *prima facie* case, which creates a rebuttable presumption that the employer acted illegally. This burden rests with the Plaintiff, who must show that: (1) she is a member of a group protected by Title VII; (2) she was qualified for the position; (3) she suffered an adverse effect on her employment; and (4) she suffered from differential application of work or disciplinary rules. Armstrong, 33 F.3d at 1314.

The Plaintiff has clearly established the first two elements of her *prima facie* case. With respect to element three, she points to two adverse employment actions: her reduction in work hours, particularly bartending shifts, and constructive discharge.[7] While the Defendant does not contest that a reduction in hours constitutes an adverse employment action, the Defendant does argue that the Plaintiff did not suffer from a differential application of work or disciplinary rules concerning her work hours. The Defendant further argues that the Plaintiff was not constructively discharged, and therefore did not suffer an adverse employment action in that respect.

a.      Reduction In Work Hours

---

[7]Although the Plaintiff made much of Cunningham's refusal to provide her with breaks once she became pregnant, she has not included this as an adverse employment action for her disparate treatment claim. It also does not appear that she has sought relief under a separate theory of constructive discharge, but has instead combined her constructive discharge allegations into her single claim of disparate treatment.

10

The Defendant argues that the Plaintiff did not suffer from a differential application of work rules with respect to her work hours because other non-pregnant employees' hours were also reduced during the same time period.  In particular, the Defendant points to nine employees whose hours were all reduced during the seasonal slowdown.[8]  Two of these employees - Joy Bennett and Jessica Morgan - allegedly worked less hours than the Plaintiff between July and September of 2005.  According to the Defendant, these employees' reduced hours demonstrate that it cut the hours of all employees during the seasonal slowdown and did not single out the Plaintiff for negative treatment.

The Defendant, however, only provides half of the picture.  While the employees the Defendant points to may have suffered some reduction in hours, only one had her work schedule reduced to the same extent as the Plaintiff, and in at least five cases, the employees worked *more* hours after the Plaintiff announced her pregnancy and after the Plaintiff's work shifts were cut.[9]  For example, between July and October of 2005, four of the employees named by the Defendant had their work hours reduced by only five to ten hours per week, while the Plaintiff had her hours cut by 10 to 30 per week.  And two of the employees - Jennifer Terry and Monica Dykes - consistently worked approximately 40 hours per week.  The facts therefore demonstrate that the Defendant applied its seasonal

---

[8]The Defendant refers to its payroll records and the following employees: Elizabeth Tagve, Joy Bennett, Amy Kimbley, Jessica Morgan, Cindy Parks, Darcy Ware, Jennifer Terry, Amber Perez, and Monica Dykes.

[9]See Payroll Records, attached as Exhibit A to Affidavit of Dennis Coughlin.  (Doc. 34-2).

slowdown rule to the Plaintiff in a much more severe - *i.e.* disparate - manner. See, e.g. Barrett v. Capital Acquisitions and Management Co., 2005 WL 5435098 (S.D. Fla. Jan. 26, 2005) (denying summary judgment where plaintiff produced some evidence that similarly situated employees were treated differently under similar work rules). See also Byrd v. Lakeshore Hospital, 30 F.3d 1380, 1383 (11th Cir. 1994) (a plaintiff need only show she was singled out for adverse treatment, not that other non-pregnant employees were treated better).

Moreover, contrary to the Defendant's position, the Plaintiff's hours remained relatively steady until July 2005, when they plunged dramatically. This close temporal proximity between when the Plaintiff announced her pregnancy and when her hours began to drop is sufficient to establish an inference that this "seasonal slowdown policy," to the extent it does, in fact, exist, was applied more severely to the Plaintiff because of her pregnancy. See Bechel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 934 (11th Cir. 1995). The Court finds that the Plaintiff has sufficiently established her *prima facie* case with respect to her disparate treatment claim of reduced work hours.

    b.    Constructive Discharge

In order to establish that she was constructively discharged, the Plaintiff must prove that the Defendant imposed working conditions on her that were so intolerable that a reasonable person in the Plaintiff's position would have been compelled to resign. See Fitz v. Pegmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003); Kilgore v. Thompson & Brock Mgmt., 93 F.3d 752, 754 (11th Cir. 1996). According to the Defendant,

it is undisputed that the Plaintiff simply did not return to work after September 16, 2005; she was not forced out of her job or terminated.  The Defendant further contends that the Plaintiff's working conditions were not so intolerable that a reasonable person in the same position would have been compelled to resign.  Lastly, the Defendant argues that it was not given an opportunity to address and/or correct the Plaintiff's various complaints, therefore precluding her from claiming constructive discharge.  See, e.g. Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987).

The Court disagrees on all accounts.  First, the Court finds that there is ample evidence, or at the very least numerous material issues of disputed fact, concerning whether or not the Plaintiff's work environment was so intolerable that it was reasonable for her to not return to work.  Taking the Plaintiff's version of the facts as true, which the Court must at this stage, she was subjected to repeated and continuous derogatory comments about her physique, her ability to raise a child, and whether she could continue working for the Defendant while pregnant.  She was denied quick snack breaks while other employees were permitted to go outside and smoke, and she was publicly reprimanded for an infraction her manager obviously did not care about.  Most importantly, her hours were continuously reduced week by week and she was prohibited from tending bar while other employees were permitted to work a regular schedule.  The Court finds these events, if true, would be sufficient to establish that the Plaintiff was constructively discharged.  See Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997).  Because

the Defendant disputes every single one of these facts, the only way to resolve this claim is to engage in an assessment of each witness' credibility - a task best left for a jury.

The Court also disagrees with the Defendant's claim that it was not given an opportunity to address the Plaintiff's complaints. The Plaintiff contends that she complained to Cunningham and Jodie Coughlin on numerous occasions between July and September 16, 2005, and that she and her mother complained to Dennis Coughlin on at least two occasions. The fact that her supervisors dispute this merely creates a factual discrepancy to be resolved at trial. Nevertheless, it is undisputed that no one took *any* action to address the Plaintiff's concerns. The one conversation Dennis Coughlin had with Cunningham two weeks before the Plaintiff quit obviously did not work, but only made matters worse. It was only *after* the Plaintiff filed her charge of discrimination that anyone took her complaints seriously, and, according to the Plaintiff's version of the facts, their reaction was to berate and yell at the Plaintiff, and tell her that she should expect such comments because she is a "cute girl." The Court therefore finds that the Plaintiff has established a *prima facie* case of disparate treatment discrimination with respect to her allegations of constructive discharge.

*2.    Legitimate Non-Discriminatory Reasons and Pretext*

Once the Plaintiff establishes her *prima facie* case, the burden shifts to the Defendant to rebut the Plaintiff's *prima facie* case by proffering a legitimate, non-discriminatory reason for its actions. The Defendant need not persuade the Court that it

was actually motivated by the proffered reason.  If the proffered reason might motivate a reasonable employer, the presumption of discrimination is rebutted.  <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1087 (11th Cir. 2004).  The Court finds that the Defendant has met its burden by arguing that it reduced the Plaintiff's work schedule due to the seasonal slowdown of business, which impacted almost every other employee to some degree.  The Defendant also contends that it reduced the Plaintiff's bartending shifts because she was found serving alcohol to minors.[10]

Because the Defendant has put forth two legitimate, non-discriminatory reasons for the Plaintiff's reduced work schedule and loss of bartending shifts, the burden moves back to the Plaintiff to establish that the Defendant's rational was pretext - that the proffered reasons did not in fact motivate the Defendant.  <u>Wilson</u>, 376 F.3d at 1087.  The Court finds that the Plaintiff has sufficiently done so in this case.  In particular, the Plaintiff has established that while other non-pregnant servers' hours were reduced, almost none were reduced as severely as the Plaintiff's, and several servers' hours actually increased during the summer season.  She has also established that Cunningham, the person ultimately responsible for setting the Plaintiff's schedule, made repeated derogatory comments about her pregnancy and her ability to work while pregnant.

---

[10]The Defendant has not otherwise attacked the Plaintiff's constructive discharge allegations, or put forth any legitimate reason for not addressing her complaints prior to September 16, 2005.  Therefore, the Court will not spend any further time analyzing this portion of the Plaintiff's claim.

The Plaintiff has also pointed to numerous inconsistencies in the Defendant's stated rationales. For example, the Defendant's interrogatory responses, which were signed under oath by Dennis Coughlin, state that every single server's hours were reduced as a result of the seasonal slowdown. The Defendant's payroll records refute this, however, clearly showing that several employees' hours were not reduced at all. At his later deposition, Mr. Coughlin retracted his interrogatory response, stating that the hours of "key personnel" remained unchanged during the summer, and, despite the fact that the Plaintiff was considered an excellent employee by both Jodie Coughlin and Cunningham, she was not considered a "key" employee.

Dennis Coughlin's testimony was then contradicted by Cunningham at his deposition, where he testified that key personnel did not work more hours than other employees, and that the Plaintiff should have worked the same hours as every other employee. In fact, Cunningham repeatedly insisted that the Plaintiff's hours were never reduced at all. The Defendant again contradicted Mr. Coughlin's testimony in its summary judgment motion, by arguing that the seasonal slowdown began much earlier in April 2005, even though Dennis Coughlin previously testified that the seasonal slowdown did not begin until late May or early June.

The Plaintiff has also established an inconsistency with respect to the Defendant's reason for removing her from bartending shifts. Dennis Coughlin testified that he found out the Plaintiff served alcohol to minors in March of 2005, and that he both verbally counseled her and immediately removed her from all bartending shifts. However, the Plaintiff has

16

testified, without contradiction by Cunningham, that she worked a minimum of two bartending shifts per week until approximately two or three weeks after she announced her pregnancy - approximately early July 2005. This discrepancy, coupled with the other enumerated inconsistencies within the Defendant's key evidence, are sufficient to create genuine issues of disputed fact as to the veracity of the Defendant's stated non-discriminatory reasons for reducing the Plaintiff's hours and removing her from bartending shifts. As such, the Court finds that summary judgment is not appropriate as to the Plaintiff's disparate treatment claims. See Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997) ("[A] plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action.").[11]

B.  Retaliation Claim

The Plaintiff's second claim is based on a theory of unlawful retaliation under Title VII. To establish a *prima facie* case of retaliation, the Plaintiff must prove: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. See Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1297 (11th Cir. 2006).

---

[11] The close temporal proximity between the Plaintiff's announcement of her pregnancy and the reduction in her hours also provides some evidence of pretext sufficient to survive summary judgment. See Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1298 (11th Cir.2006).

There is no real dispute that the Plaintiff engaged in protected activity.  Taking the facts in the light most favorable to the Plaintiff, she complained to both Jodie and Dennis Coughlin, as well as to Cunningham, on several occasions starting in July 2005, through her last day of work on September 16, 2005.  She also filed a charge of discrimination on her last day of work.  The Defendant instead attacks the last two prongs of the Plaintiff's *prima facie* case.

The Defendant first argues that the Plaintiff did not suffer any adverse employment action. With respect to this element of the Plaintiff's *prima facie* case, the Supreme Court recently clarified that an employee need only show that "a reasonable employee would have found the challenged action materially adverse."  Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct.  2405, 2415 (2006).  In other words, the materially adverse employment action must discourage a reasonable employee from making or supporting a charge of discrimination.  Id.  Under this standard, it is clear that the Plaintiff has met her evidentiary burden. It is well-established in this Circuit that a reduction in work hours which reduces an employee's take home pay constitutes a materially adverse employment action.  Cotton v.  Cracker Barrell Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir.  2006).  Although the Plaintiff's hours declined slightly in April and May of 2005, the most severe cuts took place in July through September 2005, immediately after she announced her pregnancy and began complaining to Cunningham and Jodie Coughlin.  See Matthews v.  City of Gulfport, 72 F.  Supp.  2d 1328 (M.D. Fla.  1999) (noting that

harassment which continued after employee complained may constitute an adverse employment action for a retaliation claim). In addition, the Plaintiff has presented sufficient evidence establishing that she was subjected to an abusive environment both during and after she complained, which is also sufficient, under Burlington Northern, to survive summary judgment. See, e.g., Jeter v. Montgomery County, 480 F. Supp. 2d 1293 (M.D. Ala. 2007); Redding v. Florida, Dept. of Juvenile Justice, 401 F. Supp. 2d 1255 (N.D. Fla. 2005).

    The close temporal proximity between the Plaintiff's initial complaint and the more severe cuts to her work schedule also support the existence of a causal connection between the Plaintiff's protected activity and the adverse employment actions. See Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). Because the Court has previously determined that disputed issues of material fact exist with respect to whether the Defendant's proffered reason for reducing the Plaintiff's work hours is pretextual, the Court also finds that genuine issues of material fact remain in dispute as to whether the Defendant was, in fact, motivated by the Plaintiff's complaints to take the adverse actions against her. See Meeks v. Computer Assoc., Int'l,, 15 F.3d 1013, 1021 (11th Cir. 1994) (same burden-shifting analysis for Title VII discrimination claims applies to Title VII retaliation claims). Therefore, summary judgment is denied as to this claim.

## **CONCLUSION**

Accordingly, upon due consideration, it is hereby ORDERED that the Defendant's Motion for Summary Judgment, (Doc. 30) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 12th day of July, 2007.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record